IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Judge R. Brooke Jackson

Civil Action No 18-cv-02769-RBJ

CENTRIX FINANCIAL LIQUIDATING TRUST and
JEFFREY A. WEINMAN, in his capacity as Trustee for the Centrix Financial Liquidating Trust,

    Plaintiffs,

v.

ROBERT SUTTON,
JULIE L. SUTTON REVOCABLE TRUST,
JULIE SUTTON,
DAVID SUTTON,
KATE SUTTON,
HAMPDEN IRREVOCABLE TRUST,
UNIVERSITY IRREVOCABLE TRUST,
WILLISTON TRUST,
WILLISTON TRUST GROUP, LLC.,
WILLISTON HOLDING GROUP,
WILLISTON HOLDINGS, LTD.,
PREFERRED HOLDING GROUP, LLC,
FOUNDATION FUND, LLC,
FREEDOM FUND HOLDINGS,
POLO PLACE, LLC,
HERITAGE ADVISORS, LLC,
THE ORCHARD, LLC,
ORCHARD LANE, LLC,
A FORTIORI, LLC,
PRIME HEALTH, LLC,
NANO FORMULAS, LLC,
NANO IP, LLC,
NANOSPHERE HEALTH SCIENCE, LLC,
NANOSPHERE HEALTH SCIENCES, INC.,
DOUG SYMONS,
PATRICK BAKER, and
MICHAEL CONNOLLY,

    Defendants.

# ORDER

This order first addresses the Court's subject-matter jurisdiction to hear the present dispute. The parties submitted supplemental briefs, and I have now heard two oral arguments on the issue. For the reasons below, the Court determines that jurisdiction is proper under 28 U.S.C. § 1334(b). Having found that it has jurisdiction, the Court addresses and denies, except as to defendant Michael Connolly, the pending motions to dismiss for failure to state a claim upon which relief could be granted.

## I. BACKGROUND

### A. Factual Background.

Plaintiffs Centrix Financial Liquidating Trust ("Trust") and Jeffery Weinman, trustee of the Trust ("Trustee"), filed this lawsuit against Robert Sutton, his family members, and numerous entities purportedly related to and controlled by the Sutton family. This dispute dates to September 2006, when Mr. Sutton, serving as chief executive officer of Centrix Financial, LLC ("Centrix"), filed for chapter 11 bankruptcy. Second Amended Complaint, ECF No. 149 at 2. The Centrix bankruptcy matter remains open and is ongoing. *Id.* at ¶129; Bankruptcy Case No. 06-16403-EEB.

On May 16, 2008 the bankruptcy court confirmed the Second Amended Liquidating Chapter 11 Plan ("Plan"). Bankruptcy Case No. 06-16403-EEB, ECF No. 2203. The Plan called for substantive consolidation, meaning that the liabilities and properties of the various debtors' estates were consolidated and transferred to the Trust, thus extinguished the separate legal existence of each debtor. *Id.*, ECF No. 1831 at Art. 2, ¶¶A–B. The Plan authorized the Trustee to take any and all actions necessary to pay off creditors. *Id.* at Art. 7, ¶G. To accomplish the

required payments, the Plan authorizes the Trustee to commence adversary proceedings to enforce any claim or interest belonging to the debtors. *Id.* at Art. 10, ¶A. Specifically, the Plan provides that any claims against Mr. Sutton and other nondebtor insiders and entities, including claims for fraudulent transfers out of the Centrix estate, are critical assets of the debtors' estates. *Id.* The Plan notes that these claims are "likely the key source of any meaningful recovery to unsecured creditors." *Id.*

Three months after confirmation, exercising its authority under the Plan, the Trust asserted an adversary proceeding against Mr. Sutton and his family, alleging that they used Centrix as a vehicle to perpetuate a large-scale fraud scheme on the subprime auto-loan industry. ECF No. 149 at 2. Plaintiffs refer to this scheme as the "Centrix scheme." *Id.* Little is alleged about the Centrix scheme except that "Robert and his associates used the family of entities to shield the fact that Robert was siphoning off tens of millions of dollars for the direct benefit of his family and friends," and as a result, caused Centrix to file for bankruptcy. *Id.* at ¶¶33–34. This adversary proceeding settled for a "proportionally *de minimus* amount" because Mr. Sutton, his spouse Julie, and their family trust, the Julie L. Sutton Revocable Trust ("JLSRT"), represented through sworn disclosures that they had practically no assets and were thus judgment-proof. *Id.*

The present dispute concerns the disclosures made during the first adversary proceeding. According to plaintiffs, the above disclosures which led to the settlement were fraudulent. *Id.* Plaintiffs assert that the Suttons transferred the assets held by JLSRT to numerous other entities, none of which were disclosed to plaintiffs. *Id.* at ¶¶67, 70. During settlement discussions, plaintiffs were aware of no Sutton-related trusts or entities other than JLSRT. *Id.* at ¶67. Plaintiffs assert that the Suttons created (with the assistance of their lawyer, defendant Michael

3

Connolly) a network of entities to shield their assets under the umbrella of the Hampden Irrevocable Trust. *Id.* at 2. Plaintiffs refer to this scheme involving the alleged fraudulent transfers and false disclosures as the "Hampden scheme." *Id.*

The remainder of the complaint outlines a series of alleged fraudulent transactions that occurred after plaintiffs settled the first adversary proceeding.

### B. **Procedural Background.**

To remedy the alleged fraud stemming from the Hampden scheme, plaintiffs filed a complaint in this Court on October 29, 2018. Complaint, ECF No. 1. Plaintiffs seek a $15 million entry of judgment against the Suttons for breaching the express terms of the settlement agreement. *Id.* at ¶61. To explain, the settlement agreement included a safety provision in which plaintiffs were to receive a $15 million non-dischargeable judgment if any of the financial disclosures submitted by the Suttons was materially false. *Id.* Plaintiffs' original complaint asserted six state-law claims for relief: (1) breach of contract; (2) fraudulent misrepresentation; (3) fraudulent conveyance pursuant to Colo. Rev. Stat. § 38-8-105; (4) conspiracy to defraud creditors and the Trust; (5) aiding and abetting fraud; and (6) fraudulent concealment. *Id.* at ¶¶72–103. Plaintiffs withdrew their breach of contract claim when they filed their first amended complaint in December 2018, but they continued to assert the remaining five state-law claims. ECF No. 67 at ¶¶71–97.

Defendants flooded the Court with ten motions to dismiss after plaintiffs filed their first amended complaint. Many of the motions pointed out that plaintiffs failed to allege jurisdiction in either complaint. Technically, that is true. Although the background sections of the original and first amended complaints state that "[t]he bankruptcy underlying this adversary action is twelve years old . . . ," plaintiffs did not assert jurisdiction in the "parties, jurisdiction, and

4

venue" sections of either complaint. ECF No. 1 at 1; ECF No. 67 at 1–2. Plaintiffs responded to defendants' Rule 12(b)(1) motions by arguing that this Court has "related to" jurisdiction under 28 U.S.C. § 1334(b). ECF No. 98 at 6.

At the April 26, 2019 scheduling conference, I expressed my concern regarding subject-matter jurisdiction. I invited the parties to submit supplemental briefs addressing § 1334(b)'s grant of jurisdiction. At the conference, defendants also requested oral argument on the issue.

I granted defendants' request and set the oral argument for June 11, 2019. On June 10 defendants submitted their brief addressing jurisdiction under § 1334(b). ECF No. 132. Plaintiffs elected to forgo a brief. Instead, also on June 10, plaintiffs filed a motion for leave to file a second amended complaint. ECF No. 133. I eventually granted the motion on June 12. In their second amended complaint, plaintiffs assert bankruptcy avoidance claims under 11 U.S.C. §§ 542, 544, 548, and 549. Plaintiffs argued that the crux of the original complaint concerned the fraudulent transfers of assets out of the bankruptcy estate, and that they chose to seek relief only under state statutes and not their federal counterparts. However, apparently spooked by defendants' Rule 12(b)(1) motions, plaintiffs amended their complaint to assert federal-law claims on top of their state-law claims. Plaintiffs' second amended complaint asserts 12 claims for relief. The first six claims seek to avoid pre- and post-petition fraudulent transfers under §§ 542, 544, 548, and 549. ECF No. 149 at ¶¶111–35. The remaining claims reassert the claims from the first amended complaint. *Id.* at ¶¶136–67. Plaintiffs now allege that this Court has jurisdiction under § 1331 as well as § 1334(b). *Id.* at ¶¶1–3.

Notwithstanding plaintiffs' last-minute motion for leave to amend, the oral argument on the original jurisdictional grounds—related to jurisdiction under 28 U.S.C. § 1334(b)— proceeded as planned on June 11, 2019. At first, the parties focused on § 1334(b). However,

after I indicated that I intended to grant plaintiffs' leave to amend, defendants also argued against jurisdiction under plaintiffs' new avoidance theories. Defendants argued that claims under 11 U.S.C. §§ 542, 544, 548, and 549 do not apply in the post-confirmation context, but when pressed for authority to support that position, defendants requested leave to brief the issue. When I asked plaintiffs' counsel whether defendants' position was correct, counsel answered that he didn't know, but likewise, he asked for leave to brief the issue.

I granted the parties' request for additional briefing and held another oral argument on August 15, 2019. Plaintiffs filed their brief on June 21, 2019. Curiously, the brief focused on "Trustee's standing to pursue claims explicitly retained in the Centrix chapter 11 plan." ECF No. 150. Defendants were quick to point out in their brief on "lack of federal jurisdiction" that Trustee's standing has never been questioned by the Court or by the defendants. ECF No. 151. Next, defendants renewed their objections to § 1334(b) jurisdiction, and then went on to argue that plaintiffs' new federal claims were frivolous, and thus, 28 U.S.C. § 1331 does not provide federal question jurisdiction.

## II. STANDARD OF REVIEW

### A. **Jurisdiction**.

"Subject matter jurisdiction defines the court's authority to hear a given type of case." *City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d 1089, 1092 (10th Cir. 2017) (quotation and citation omitted). In contrast to general jurisdiction enjoyed by state courts, a federal court's jurisdiction is limited, possessing "only that power authorized by Constitution and statute." *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). A federal court is to presume that a cause of action lies

outside of this limited jurisdiction unless the party asserting federal jurisdiction—plaintiffs in this case—can establish that jurisdiction is proper. *Id.* (citing *Kokkonen*, 511 U.S. at 377).

The federal statute that I grapple with in this order is 28 U.S.C. § 1334(b). This section is an express grant of authority to hear a cause of action "related to" a bankruptcy case. Section 1334(b) provides that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

### B. **Failure to State a Claim**.

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true, *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

### III. ANALYSIS

### A. **Jurisdiction**.

Plaintiffs' second amended complaint avers that this Court has jurisdiction under 28 U.S.C. §§ 1334(b) and 1331. ECF No. 149 at ¶¶1–2. Defendants argue that this lawsuit is not sufficiently related to the original bankruptcy, especially because the bankruptcy court confirmed

7

the Plan in 2008. Defendants' Brief on Lack of Federal Jurisdiction, ECF No. 132 at 2–5. Defendants then argue that the newly asserted bankruptcy avoidance claims are patently without merit. Defendants' Supplemental Brief on Lack of Federal Jurisdiction, ECF No. 151 at 2–5. As such, they argue that plaintiffs' assertion that this lawsuit is "arising under" or "arising in" a case under title 11, or that this Court has federal question jurisdiction under § 1331, must fail. *Id.* Because I find that plaintiffs' causes of action are sufficiently related to the bankruptcy proceeding, I only address jurisdiction under § 1334(b).

1. **28 U.S.C. § 1334(b): "Related To" Jurisdiction.**

"The statutory grant of 'related to' jurisdiction is quite broad." *Boston Reg'l Med. Ctr., Inc. v. Reynolds (In re Boston Reg'l Med. Ctr., Inc.)*, 410 F.3d 100, 105 (1st Cir. 2005), but it is not "limitless." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995). Even so, it is the broadest category of jurisdictional grounds contained in § 1334(b). *See In re Angel Fire Corp.*, No. 12-CV-01256-MCA-WPL, 2013 WL 1856350, at *9 (D.N.M. May 2, 2013). This means that if I have "related to" jurisdiction over plaintiffs' state-law claims, federal jurisdiction is proper even if plaintiffs' newly pled federal-law claims fail as a matter of law. Consequently, I will start the jurisdictional analysis here.

"Related proceedings are civil proceedings that, in the absence of a bankruptcy petition, could have been brought in a district court or state court." *In re Gardner*, 913 F.2d 1515, 1518 (10th Cir. 1990). "[T]he test for determining whether a civil proceeding is related in bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy," such as "alter[ing] the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy estate." *Id.* (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)

8

(emphasis omitted), *overruled on other grounds by Things Remembered v. Petrarca*, 516 U.S. 124 (1995)). This test is commonly referred to as the *Pacor* test. In addition, the Supreme Court has stated that "causes of action owned by the debtor which become property of the estate" are proceedings related to the bankruptcy. *Celotex Corp.*, 514 U.S. at 307 n.5 (1995).

## 2. **Post-Confirmation "Related To" Jurisdiction Generally.**

The *Pacor* test, however, is problematic in the post-confirmation context. If I applied the test literally in this case, it would strip the Court of "related to" jurisdiction. The reason is because, "[a]fter a debtor's reorganization plan has been confirmed, the debtor's estate . . . ceases to exist . . . ." *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390 (5th Cir. 2001); *see also Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 165 (3d Cir. 2004) ("At the most literal level, it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred.").

On its face, § 1334(b) treats jurisdiction the same irrespective of its plan-confirmation status. But most courts agree that "related to" jurisdiction narrows after the bankruptcy court confirms the reorganization plan. *See Santander Consumer, USA, Inc. v. Houlik (In re Houlik)*, 481 Bankr. 661, 675 (10th Cir. BAP 2012). Recognizing the *Pacor* test's shortcomings in the post-confirmation context, the Third Circuit created a new "close nexus" test. *Resorts Int'l*, 372 F.3d at 166. The Ninth, Fourth, and Second Circuits have expressly adopted this test, but the Tenth Circuit has yet to formally do so.[1]

---

[1] The Tenth Circuit hasn't specifically articulated a test for post-confirmation "related to" jurisdiction. *In re Sunnyland Farms, Inc.*, No. 14-10231-T11, 2019 WL 507536, at *5 (Bankr. D.N.M. Feb. 8, 2019). However, in *Angel Fire Corp.*, Magistrate Judge Lynch conducted a thorough review of Tenth Circuit post-confirmation caselaw. 2013 WL 1856350, at *9–14. Judge Lynch concluded that "the Tenth Circuit and its B.A.P. have effectively applied the close-nexus test to the few post-confirmation disputes that have come[] to their attention." *Id.* at *12. In contrast, as I stated, the Ninth Circuit adopted the close

9

Under this test, post-confirmation jurisdiction is proper when there is a "close nexus to the bankruptcy plan or proceeding . . . ." *Id.* "Matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *Id.* at 167. Courts recognize that this test "retains a certain flexibility," *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1194 (9th Cir. 2005), and therefore, the existence of post-confirmation related to jurisdiction "must be determined case-by-case." *Boston Reg'l*, 410 F.3d at 107.

Moreover, while not articulating a test, the Tenth Circuit has stated that "courts will exercise jurisdiction over post-confirmation disputes if the matter sufficiently affects creditors' recoveries under a plan of reorganization." *In re CF & I Fabricators of Utah, Inc.*, 150 F.3d 1233, 1237 (10th Cir. 1998) (citation omitted).

### 3. <u>Post-Confirmation "Related To" Jurisdiction Concerning Liquidated Plans</u>.

The overwhelming majority of the cases that I have reviewed that have adopted and adhered to the close nexus test involve a usual chapter 11 reorganization plan, meaning that the debtor continues to operate in the marketplace after filing for bankruptcy, and creditors look to the future earnings of the debtor to satisfy outstanding debts. *See Craig's Stores*, 266 F.3d at 390; *Houlik*, 481 B.R. at 663–64. But where, as here, a liquidating plan is involved, most courts have not narrowed post-confirmation jurisdiction. A brief survey of these cases follows.

---

nexus test in *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1194 (9th Cir. 2005) ("[W]e adopt and apply the Third Circuit's "close nexus" test for post-confirmation "related to" jurisdiction, because it recognizes the limited nature of post-confirmation jurisdiction but retains a certain flexibility, which can be especially important in cases with continuing trusts."). The Fourth Circuit adopted the test in *Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 837 (4th Cir. 2007). And the Second Circuit adopted the test in *In re DPH Holdings Corp.*, 448 F. App'x 134, 137 (2d Cir. 2011) (unpublished).

In *Boston Reg'l*, Boston Regional Medical Center ("BRMC") filed for chapter 11 bankruptcy protection and proposed a strict liquidating plan of reorganization, which the bankruptcy court confirmed. 410 F.3d at 104. The plan established a reorganized BRMC (the "liquidating BRMC") whose sole purpose was to liquidate BRMC's assets and distribute the proceeds to BRMC's creditors. *Id.* Five months after confirmation, in an odd turn of events, BRMC learned that it was an intended beneficiary of a wealthy New England woman's last will and testament. *Id.* The liquidating BRMC initiated an adversary proceeding in the bankruptcy court against the trustee and other beneficiaries of the woman's estate, seeking to compel the trustee to turn over the hospital's share of the trust assets. *Id.* The defendants in the adversary proceeding moved to dismiss for lack of subject matter jurisdiction, arguing that jurisdiction was lacking because the litigation arose after the bankruptcy court confirmed the plan. *Id.* at 104–05.

The bankruptcy court rejected this argument, holding that "related to" jurisdiction was proper under § 1334(b). *Id.* at 104. On appeal, the First Circuit affirmed. *Id.* at 107. While the First Circuit acknowledged that courts often curtail "related to" jurisdiction following plan confirmation, it noted that these "narrowing interpretations have been invoked only with respect to actions involving reorganized debtors that have reentered the marketplace. No case has suggested that courts should abandon the general rule [of broad related to jurisdiction] in all post-confirmation cases." *Id.* at 105–06. The First Circuit reasoned that a liquidating debtor's sole purpose is to execute an order of the bankruptcy court, and as such, any litigation involving a liquidating debtor "relates much more directly to a proceeding under title 11." *Id.* at 107. In sum, the court held "that when a debtor (or a trustee acting to the debtor's behoof) commences litigation designed to marshal the debtor's assets for the benefit of its creditors pursuant to a

11

liquidating plan of reorganization, the compass of related to jurisdiction persists undiminished after plan confirmation." *Id.*

In *In re DPH Holdings Corp.*, Delphi Automotive Systems ("Delphi") filed for chapter 11 bankruptcy. 437 B.R. 88, 92 (S.D.N.Y. 2010). Like in *Boston Reg'l*, the bankruptcy court confirmed Delphi's liquidating plan. *Id.* at 93. Delphi then filed a motion to assume certain insurance contracts with its insurers, which the bankruptcy court approved. *Id.* A dispute arose concerning the scope of coverage of the insurance policies, prompting the insurers to file an adversary proceeding seeking a declaratory judgment regarding its legal responsibilities under the policies. *Id.* The adversary defendants argued that bankruptcy jurisdiction was lacking, but the bankruptcy court and the reviewing district court rejected that argument. *Id.* at 94. Applying broad related to jurisdiction, the district court stated,

> Most important here, however, is that, where a debtor's plan is a liquidating plan, and "the reorganized debtor's sole purpose is to wind up its affairs, convert its assets to cash, and pay creditors a pro rata dividend," the bankruptcy court's post-confirmation jurisdiction is more broad because its jurisdiction relates directly to core functions of the bankruptcy court and its exercise of jurisdiction does not require the bankruptcy court to supervise a newly reorganized business. *See Kirschner v. Grant Thornton LLP (In re Refco, Inc. Sec. Lit.)*, 628 F. Supp. 2d 432, 442 (S.D.N.Y. 2008) (quotations omitted). Here, Delphi's plan is a liquidating plan. The Bankruptcy Court has jurisdiction over the Adversary Proceeding because it will have an effect on the determination of claims and expenses, and ultimately the distribution of the estate—Delphi's sole purpose at this time.

*Id.* at 97–98.

In *Fried v. Lehman Bros. Real Estate Assocs. III, L.P.*, after Lehman Brothers Holding, Inc. ("LHI") filed for chapter 11 bankruptcy, investors sued Lehman Brothers Real Estate Associates and related entities in New York state court, alleging various federal- and state-law claims arising from failed investments. 496 B.R. 706, 708 (S.D.N.Y. 2013). After defendants removed the lawsuit to federal court, the plaintiffs amended their complaint to withdraw their

12

federal law claims. *Id.* at 709. The plaintiffs then moved to dismiss for lack of jurisdiction, arguing that LHI's bankruptcy proceeding was in the post-confirmation stage thus striping the district court of related to jurisdiction. The district court rejected this argument. *Id.* at 709. The district court's rationale for maintaining broad related to jurisdiction was simple: this case could affect the execution and administration of LHI's chapter 11 liquidating plan because it could impact the amounts available to be paid to LHI's creditors. *Id.* at 710.

*Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189 (9th Cir. 2005), is the outlier. This case involved numerous mining entities that operated mines in Montana. *Id.* at 1192. The debtors, Pegasus Gold Corporation and 18 of its affiliates, filed for chapter 11 bankruptcy. Following the filing, the state of Montana brought suit against the debtors regarding the debtors' reclamation and clean up obligations. *Id.* The debtors, the state, and other related parties reached a settlement agreement concerning the financial responsibility for the environmental cleanup process. The bankruptcy court approved the settlement agreement. *Id.* The terms required the debtors to form a new entity called the Reclamation Services Corporation ("RSC") tasked with performing the reclamation work, at least until the state could hold a competitive bidding process to replace RSC. *Id.* Days after the parties settled, the bankruptcy court confirmed the debtors' "liquidating/reorganizing plan." *Id.* The plan specifically incorporated the terms of the settlement agreement. *Id.*

The relationship between the state and RSC deteriorated quickly, and the state terminated RSC and hired a replacement. *Id.* RSC and the bankruptcy trustee sued the state and the replacement company, Spectrum Engineering, in bankruptcy court for breaching the settlement agreement and the plan. *Id.* The state and Spectrum Engineering moved to dismiss for lack of jurisdiction, which the bankruptcy court and the district court denied. *Id.* at 1193.

13

The Ninth Circuit, unlike the *Boston Reg'l*, *DPH Holdings*, and *Lehman Bros.* courts, applied the narrower close nexus test for post-confirmation related to jurisdiction, even though this case involved a liquidating debtor. Even so, the court concluded that the breach of contract claims had a sufficiently close nexus to the bankruptcy to uphold jurisdiction because resolution of these claims would require interpretation of the settlement agreement and the confirmed plan. *Id.* at 1194. Moreover, the court found that these claims and their remedies "could affect the implementation and execution of the Plan itself, which specifically called for the creation of RSC and the transfer of debtor money to fund it." *Id.* The court noted that the Third Circuit's close nexus test "recognizes the limited nature of post-confirmation jurisdiction but retains a certain flexibility, which can be especially important in cases with continuing trusts." *Id.* (citing *Resorts Int'l*, 372 F.3d at 166–67). The court provided one caveat in its holding. In a footnote, the court specifically rejected the notion that jurisdiction lies simply because the "action could conceivably increase the recovery to the creditors." *Id.* at 1194 n.1 (citing *Resorts Int'l*, 372 F.3d at 170; *Craig's Stores*, 266 F.3d at 391.).

4. **Applying Post-Confirmation Jurisdiction in this Case**.

As I mentioned, Defendants argue that plaintiffs' claims fail the close nexus test because the bankruptcy judge confirmed Centrix's chapter 11 plan in 2008. ECF No. 132 at 2–5. In addition, the Plan has been substantially consummated, defined by the Plan as "[t]he making of the initial distribution under the Plan to creditors holding Allowed Claims." *Id.* To support their jurisdictional argument, defendants cite numerous cases where the respective courts narrowed "related to" jurisdiction following confirmation. But the cited cases are distinguishable from the present case because they did not involve a strict liquidating plan. *See Houlik*, 481 B.R. at 675; *In re Sunnyland Farms, Inc.*, No. 14-10231-T11, 2019 WL 507536, at *10–11 (Bankr. D.N.M.

Feb. 8, 2019); *In re In Play Mbrshp. Golf*, 576 Bankr. 15, 25-26 (Bankr. D. Colo. 2017); *Vanguard Prods. Corp. v. Citrin (In re Indicon),* 499 Bankr. 395, 402 (D. Conn. 2013). As such, I find the reasoning from *Boston Reg'l*, *DPH Holdings*, and *Lehman Bros.*, where the courts declined to narrow jurisdiction when dealing with liquidating plans, more persuasive.

While these cases are not binding on a district court in this circuit, the Tenth Circuit B.A.P. cited *Boston Reg'l* favorably, noting that "[i]n the liquidating plan context, one circuit court has, *understandably*, applied a standard broader than the close nexus test." *Houlik*, 481 B.R. at 675 (emphasis added) (citing *Boston Reg'l*, 410 F.3d at 107). Moreover, although the *Sunnyland Farms* court did apply the close nexus test to a post-confirmation dispute, it indicated that it would apply a broader test if faced with a post-confirmation liquidating plan. 2019 WL 507536, at *5 (citing *Houlik*, 481 B.R. at 675).

Applying the caselaw discussed above, I am satisfied that plaintiffs' claims relate to the ongoing underlying bankruptcy for four related but independent reasons. First, the Plan not only authorizes but also requires Trustee to take actions reasonably necessary to carry out the Plan. As a liquidating plan, Trustee's primary purpose is to reduce the debtors' assets to cash, and then distribute the cash to creditors, secured and unsecured. At the first oral argument on jurisdiction, however, plaintiffs' counsel represented to the Court that "not a single unsecured creditor has been paid under this Plan." The primary reason for this, according to plaintiffs, is that defendants indicated during settlement negotiations that they had no assets. Now plaintiffs allege that defendants' financial disclosures were fraudulent, and that they squirreled away tens of millions of dollars in Centrix assets that were fraudulently conveyed prior to Centrix's bankruptcy filing. As such, this lawsuit is plaintiffs' attempt to execute the confirmed Plan. This alone would satisfy the close nexus test. *See Resorts Int'l*, 372 F.3d at 167 ("Matters that

15

affect the . . . execution . . . of the confirmed plan will typically have the requisite close nexus."). And, as the Tenth Circuit has stated, "courts will exercise jurisdiction over post-confirmation disputes if the matter sufficiently affects creditors' recoveries under a plan of reorganization." *CF & I Fabricators of Utah*, 150 F.3d at 1237 (citation omitted). With the amount alleged along with the representation by plaintiffs' council at the first argument, plaintiffs' claims could sufficiently affect creditors' recoveries thus making related to jurisdiction proper.

Second, in a similar manner as above, the Plan expressly authorizes Trustee to commence adversary proceedings to enforce claims belonging to the debtors. It lists potential claims against Mr. Sutton as a critical asset of the debtors' estates. Because the Supreme Court has stated that "causes of action owned by the debtor which become property of the estate" fall within related to jurisdiction, *Celotex Corp.*, 514 U.S. at 307 n.5 (1995), plaintiffs' causes of action fall within § 1334(b)'s jurisdictional grasp.

Third, plaintiffs' claims are related to the bankruptcy case because, as a liquidating trust, plaintiffs' sole purpose is to implement and execute the confirmed Plan. That means reducing debtors' assets and distributing the assets to creditors. Plaintiffs cannot complete that mission until they recover some or all of defendants' allegedly fraudulently transferred assets. Consequently, as the First Circuit noted, litigation involving a liquidating debtor "relates much more directly to a proceeding under title 11." *Boston Reg'l*, 410 F.3d at 105.

Lastly, I note that my decision to uphold related to jurisdiction in this case does not clash with the courts that have narrowed jurisdiction post-confirmation in non-liquidating situations. The rationale for narrowing post-confirmation jurisdiction for a typical chapter 11 debtor who reenters the marketplace is that post-confirmation related to bankruptcy jurisdiction could conceivably go on forever so long as the debtor remains in business. *See id.* at 106. This would

not only improperly expand bankruptcy jurisdiction, but it would unfairly advantage the reorganized debtor by allowing the reorganized debtor to funnel all litigation affecting it into one federal court. *Id.* But in this case, as in most cases involving a liquidated debtor, plaintiffs' sole purpose is to convert Centrix's assets into cash and pay its creditors, not to reenter the marketplace. Once Trustee satisfies Centrix's creditors, related to jurisdiction will cease to exist. Thus, the rationale for narrowing jurisdiction is lacking.

In addition, endless litigation is not the only justification given for narrowing jurisdiction after plan confirmation. The second reason is that fewer proceedings are actually related to the underlying bankruptcy case once a plan has been confirmed and the reorganized debtor reenters the marketplace. *Id.* As the First Circuit succinctly stated, "as the corporation moves on, the connection attenuates." *Id.* at 107. But in this case, plaintiffs are liquidated debtors attempting to fulfil their responsibilities under the confirmed Plan. The money plaintiffs recover in this lawsuit will directly impact Centrix's creditors making this lawsuit more closely related to the bankruptcy.

For these reasons, I find that subject-matter jurisdiction over plaintiffs' claims is proper.

### B. Failure to State a Claim.

The Court grants, without prejudice and with leave to amend, defendant Michael Connolly's motion to dismiss. The Second Amended Complaint contains conclusory allegations but no factual allegations against Mr. Connolly that plausibly support a claim against him. Although facts were asserted during the August 15, 2019 oral argument that might support a claim, I can only go by what is alleged in the Second Amended Complaint.

As for the remainder of the pending Rule 12(b)(6) motions, after construing plaintiffs' well-pled factual allegations and inferences that can reasonably be drawn from those allegations in plaintiffs favor, I find that dismissal at this stage is not warranted.

**ORDER**

1. Having considered the parties' briefs and arguments, the Court holds that this lawsuit is related to the underlying bankruptcy. Accordingly, subject-matter jurisdiction under § 1334(b) is proper.

2. The Court further finds that the Second Amended Complaint states claims against all defendants except Michael Connolly upon which relief could be granted.

3. Accordingly, the pending motions to dismiss at ECF Nos. 152, 154 and 155 are DENIED. Michael Connolly's motion to dismiss, ECF No. 153, is granted. The claims against him in the Second Amended Complaint are dismissed without prejudice and with leave to amend.

DATED this 10th day of September, 2019.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge